UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUAN JOSE BRISENO CASTELLON,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT, Warden of the Northwest ICE Processing Center, and MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security,<br><br>Respondents. | CASE NO. 2:26-cv-03259-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner[1] Juan Jose Briseno Castellon's Amended Petition for Writ of Habeas Corpus. Dkt. No. 9. Having reviewed the petition, Respondents' Return (Dkt. No. 14), Petitioner's Traverse (Dkt. No. 19), and the relevant record, the Court GRANTS the petition and ORDERS Petitioner's release.

[1] Petitioner originally filed his petition jointly. *See* Dkt. No. 1 (Emergency Petition for Writ of Habeas Corpus). On September 28, 2026, however, the Court dismissed the co-petitioner's claims from this petition. *See* Dkt. No. 11 at 2–3.

## I. Background

Petitioner Juan Jose Briseno Castellon is a native and citizen of Mexico who has lived in the United States continuously since 2001. Dkt. No. 9 at 2. On July 13, 2026, U.S. Immigration and Customs Enforcement ("ICE") and Border Patrol officers arrested Petitioner in Bellingham, Washington. *Id.* Petitioner was taken to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he has been detained ever since. *Id.* at 3.

On August 14, 2026, the Honorable Tiffany M. Cartwright, United States District Judge, granted Petitioner's first petition for writ of habeas corpus and ordered Respondents to either release Petitioner from detention or provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a). *Briseno-Castellon v. Scott*, No. C26-2638, 2026 WL 2363643, at *1 (W.D. Wash. Aug. 14, 2026). On September 16, 2026, Petitioner attended a bond hearing, where Immigration Judge ("IJ") Traci Winder determined that Petitioner was a flight risk and denied conditional release. Dkt. No. 12 at 5–6. On September 24, 2026, Petitioner filed the instant Amended Petition for Writ of Habeas Corpus, arguing that his bond hearing had denied him due process, because Judge Winder had abused her discretion by issuing an order that was, among other things, "devoid of any reasoned or individualized analysis and unsupported by the record." Dkt. No. 9 at 1–2 (boldface removed).

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III. DISCUSSION

### A. Administrative Exhaustion

The Ninth Circuit requires, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). "The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts in the Ninth Circuit consider the so-called *Puga* factors when determining if prudential exhaustion is required, which include whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Even if the *Puga* factors establish that administrative exhaustion is required, however, a court may waive the exhaustion requirement if a petitioner demonstrates that one of the so-called *Laing* factors applies. *Hernandez*, 872 F.3d at 988. The *Laing* factors include whether: (1) "administrative remedies are inadequate or not efficacious"; (2) "pursuit of administrative remedies would be a futile gesture"; (3) "irreparable injury will result"; or (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

Here, the third *Laing* factor points toward a waiver of administrative exhaustion. Petitioner argues that "continued detention itself constitutes irreparable harm. Where the injury alleged is the unconstitutional deprivation of physical liberty, irreparable harm is inherent in the

claim." Dkt. No. 9 at 18 (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Petitioner asserts that his continued detention prolongs his separation from his family and prevents him from returning to the business he owns, which affects his ability to fulfill his financial obligations to his family and business. *See* Dkt. No. 9 at 3; Dkt. No. 19 at 6. Courts in this District have found similarly in analogous situations. *See, e.g.*, *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) ("[T]he Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim. . . . Petitioner has dependents who rely on him financially and emotionally, and that relationship is severely negatively impacted by his continued detention."); *Shirley v. Scott*, No. C26-2980, 2026 WL 2833676, at *3 (W.D. Wash. Sept. 22, 2026) ("[E]ven if petitioner's administrative appeal is ultimately successful, she will have suffered irreparable injury during the long wait."); *De La Torre Ferretriz v. Hernandez*, No. C26-2235, 2026 WL 2123037, at *3 (W.D. Wash. July 23, 2026) ("W]aiting for the BIA's resolution of [petitioner's] appeal would risk an indefinite extension of his detention."). The Court agrees.

On this issue, Respondents' position is inconsistent and nonsensical. Respondents first note that Petitioner identifies irreparable harm in "his continued detention itself, as well as harm to his children caused by his separation from them, and general disruption of his life." Dkt. No. 14 at 9. Respondents then argue, "Although Petitioner and his family may face hardships relating to his continued detention, the mere passage of time or the delay inherent in the administrative process is insufficient to establish the type of unique, irreparable injury necessary to waive prudential exhaustion." *Id.* None of this holds together. Respondents concede that "Petitioner and his family may face hardships"—or, put differently, *harm* attributable to family separation and other disruptions to Petitioner's life—then immediately, within the same sentence, assert that it is "the mere passage of time" that represents the alleged injury. *Id.* If, as

Respondents appear to acknowledge, there are hardships suffered by Petitioner and his family that are *separate from* and *in addition to* the chronological passage of time, then there is self-evidently more harm here than "the mere passage of time." Put another way, Petitioner's family is doing more than simply waiting; they are waiting *and* suffering the effects associated with Petitioner's absence from the household. As Petitioner explains,

> [Petitioner's] continued detention deprives him of his fundamental liberty pursuant to a constitutionally deficient custody determination, prolongs his separation from his family, including his United States citizen children, and prevents him from returning to his established life and community. Those are individualized consequences of continued detention, not merely the generalized passage of time inherent in administrative review.

Dkt. No. 19 at 6. There are people involved here, not just calendars and clocks.

Therefore, the Court waives administrative exhaustion.

## B. Adequacy of Petitioner's Bond Hearing

### 1. The *Guerra* Factors and Abuse of Discretion

"To determine whether a [noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). These so-called "*Guerra* factors" include:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Id.* (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

The Court reviews the prosecution of Petitioner's bond hearing for an IJ's abuse of discretion. *See id.* at 784. Under an abuse-of-discretion standard, the court "cannot reweigh evidence, but can only determine whether the immigration court applied the correct legal standard." *Id.* at 785 (citation modified). "When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *6 (W.D. Wash. May 11, 2026) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)). "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). "Second, it may be clear from the adjudicator's opinion itself that [they] simply did not apply the correct standard to the facts." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). Both types of challenge are relevant here.

**2. Petitioner's Hearing and the IJ's Decision**

At the bond hearing, Petitioner had the burden of demonstrating by a preponderance of the evidence that he was neither a flight risk nor a danger to the community. *Guerra*, 24 I. & N. Dec. at 38. The IJ determined that Petitioner had not carried his burden. *See* Dkt. No. 12 (Order of the IJ) at 5.

Petitioner argues that "[t]he IJ's custody determination[] . . . w[as] arbitrary and constituted an abuse of discretion because . . . the bond hearing[] and the resulting written decision[] failed to provide the individualized, reasoned analysis required by due process." Dkt. No. 9 at 8. Specifically, Petitioner makes two arguments: First, the IJ neglected to "consider positive equities"—that is, *Guerra* factors that pointed toward granting bond. *See id.* at 9–11, 15–16. Second, the IJ impermissibly "relied on Petitioner[']s recent removal order" as evidence of Petitioner's flight risk. *Id.* at 11–12.

The IJ's written order offers little insight. It is a checked-box form with four boxes checked:

> [X] ORDERED that the request for a change in custody status be denied. No bond.
>
> [X] Flight Risk.
>
> [X] OTHER: Conditional release is: denied.
>
> [X] OTHER: Ability to pay considered.

Dkt. No. 12 at 5. This represents the entirety of the IJ's written explanation for her decision.

For their part, Respondents argue that Petitioner "conveniently fails to detail for the Court the immigration judge's oral findings made at the hearing." Dkt. No. 14 at 4. Even accounting for sarcasm, this is not true. For example, Petitioner's petition refers to "the extent the IJ relied on Petitioner['s] recent removal orders" (Dkt. No. 9 at 11), a reference that, given the lack of detail or explanation in the written order, could only relate to conclusions that the IJ made orally, at the hearing. In any event, Respondents provided the Court with an audio recording of Petitioner's hearing (Dkt. No. 18), so the Court has the relevant administrative record before it and, consequently, as much insight into the IJ's legal analysis as is presently available.

At Petitioner's bond hearing, the IJ orally cited two reasons for denying bond—(1) Petitioner's "prior immigration history"; and (2) the fact that he had recently been denied cancelation of removal. Dkt. No. 18 at 16:15–16:26. As to the former, the Court will discuss the IJ's consideration of Petitioner's "prior immigration history" below.

As to the latter, however, an IJ's prior disposition of a noncitizen's applications for relief is not reasonably considered part of the *Guerra* analysis. This is evident in the language of *Guerra* itself. *See Guerra*, 24 I. & N. Dec. at 40. None of the nine factors, that is, has anything to do with denial of—in Petitioner's case—cancelation of removal (*see* Dkt. No. 16-4 (Order of the

IJ) at 2). Here, Respondents' attempt to shoehorn it into the analysis is unconvincing. Respondents assert that Petitioner's "limited availability of relief from removal" is "precisely the type of consideration *Guerra* recognizes as legitimate." Dkt. No. 14 at 10. But this argument does not hold water. With respect to what might be considered the *Guerra* factors associated with immigration procedure (as opposed to those associated with a noncitizen's criminality or their social circumstances and biography), denial of cancelation of removal does not map onto a noncitizen's "history of immigration violations" (factor seven), and it is divorced from the noncitizen's "manner of entry to the United States" (factor nine). *See Guerra*, 24 I. & N. Dec. at 40. And Respondents' attempt—by way of a citation to *Mendoza v. Hernandez*—to connect it to consideration of a noncitizen's attempts to flee (factor eight), is clumsy and disingenuous. *See* Dkt. No. 14 at 10. In *Mendoza*, as quoted by Respondents, the district court concluded, "Given [their] attempt to flee, Petitioner has not shown that the IJ's decision finding risk of flight applied an incorrect legal standard or lacked a reasonable foundation." No. C26-2804, 2026 WL 2620253, at *3 (W.D. Wash. Sept. 4, 2026). This might be relevant here if, instead of applying for cancelation of removal, Petitioner had attempted to flee. But he did not, and Respondents' presumption that these actions are even remotely comparable defies common sense.

The IJ's arbitrary trip beyond the *Guerra* factors here was unreasonable, because she provided no rationale or authority for her presumption that denial of an application for cancelation of removal has any bearing on flight risk. *Cf. Martinez*, 124 F.4th at 785 ("accept[ing] that the BIA applied the correct legal standard *if the BIA expressly cited and applied the relevant caselaw* in rendering its decision" (citation modified) (emphasis added)). The Court thus concludes that the second consideration in the IJ's decision—that is, the denial of Petitioner's application for cancelation of removal—was inappropriate. *See Dela Cruz v. Napolitano*, 764 F. Supp. 2d 1197, 1200 (S.D. Cal. 2011) (recognizing potential due-process

violation where IJ "consider[ed] certain factors not explicitly set forth in *Guerra* at the bond hearing"). This leaves the IJ's first consideration—Petitioner's "prior immigration history"—as the sole basis for the bond denial.

A noncitizen's "prior immigration history" can reasonably be connected to the seventh and ninth factors—(7) the noncitizen's history of immigration violations; and (9) the noncitizen's manner of entry to the United States. The IJ found that Petitioner had unlawfully entered the United States twice—in March 1998 and again in May 2001. *See* Dkt. No. 18 at 6:55–7:11. (Petitioner also unsuccessfully attempted to enter the United States without permission on or about May 18, 2001. *See id.* at 10:43–10:48). These findings represent Petitioner's "prior immigration history," at least in so far as they were characterized and considered by the IJ. Accordingly, they constitute the entire quantum of evidence that the IJ determined weighed against the granting of bond.

For his part, in support of bond, Petitioner asserted that he had been present in the United States for some 25 years. *See* Dkt. No. 18 at 4:35–4:43. Petitioner has a naturalized sister and a brother who is a permanent resident. *See id.* at 5:08–5:14. He has three children who are United States citizens, as well as a partner who is the mother of these children. *See id.* at 5:16–5:24, 6:03–6:10. Petitioner has been self-employed in the roofing industry since 2020. *See id.* at 5:37–5:45. Petitioner has lived in Lynden, Washington, "for quite some time." *See id.* at 5:45–5:50. Petitioner has no criminal record. *See id.* at 4:24–4:48. All of this, Petitioner argues, renders him "not a flight risk." *Id.* at 6:30–6:34.

The Court cannot second-guess the IJ's weighing of the factors or consideration of individual pieces of evidence but, even so, in reviewing for abuse of discretion, the Court cannot overlook the fact that the IJ relied on just two factors, out of nine, to do an awful amount of work. As a court in this District recently observed, *Guerra* "factors should not be viewed so

broadly or given such undue weight as to risk either denying release or 'requiring a bond of almost every [noncitizen] who is held in deportation proceedings.'" *Gomez-Ortiz v. Scott*, No. C26-3284, 2026 WL 3216073, at *5 (W.D. Wash. Oct. 27, 2026) (quoting *Matter of Patel*, 15 I. & N. Dec. 666, 667 (BIA 1976)). Yet that is precisely what the IJ has done here, when she effectively made factors seven and nine dispositive irrespective of any record evidence connected to any other factor. Allowing the fact of prior unlawful entry alone to be determinative would result in a denial or the requirement of a bond in nearly every case, defeating the purpose of *Guerra*'s nine-factor framework. In light of this clear observation, the Court cannot avoid the inevitable conclusion that "no reasonable fact finder could review the record before the immigration judge and conclude that Petitioner is a flight risk." *Haidari v. Scott*, No. C26-1655, 2026 WL 1628663, at *3 (W.D. Wash. June 5, 2026). Petitioner argues that the IJ "fail[ed] to engage with the particular facts of Petitioner's case" (Dkt. No. 9 at 11), and the Court agrees. The IJ abused her discretion by reviewing the record and still determining, somehow, that Petitioner had not demonstrated that he was not a flight risk.

**C. Appropriate Remedy**

District courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Soriano*, 830 F. Supp. 3d at 1081. Here, Petitioner was denied due process of law and kept in detention based on a legally erroneous dangerousness and/or flight risk finding. In line with other courts in this District, and given the present circumstances, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *id.*; *see also Tavurov*, 2026 WL 1283513, at *10 (finding IJ abused discretion in denying bond and ordering immediate release); *Loya Medina v. Hernandez*, No. C26-772, 2026 WL 1260848, at *8–9 (W.D. Wash. May 7, 2026) (same); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (same).

Accordingly, the Court ORDERS Petitioner's immediate release.

## IV. CONCLUSION

Accordingly, Petitioner's Amended Petition for Writ of Habeas Corpus (Dkt. No. 9) is GRANTED. It is further ORDERED:

(1) Respondent, the Government, and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a) SHALL release Petitioner from detention **within twenty-four (24) hours** of this Order under appropriate conditions of release;

(b) SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

Dated this 29th day of October 2026.

Tana Lin
United States District Judge